IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RONALD VAN PELT,**<br>**#R00514,**<br><br>              Plaintiff,<br><br>v.<br><br>**JON M. URASKI,**<br>**CHARLES W. HECK,**<br>**BRADLEY A. KIRKMAN, and**<br>**JEFFERY M. DENNISON,**<br><br>              Defendants. | Case No. 23-cv-01656-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Ronald Van Pelt, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Danville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while housed at Pinckneyville Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff alleges that on December 4, 2020, he was taken to restrictive housing and issued a disciplinary report, authored by Correctional Officer Uraski, for engaging in security threat group

activity. (Doc. 1, p. 1, 33). The report states that Plaintiff sent an electronic message to Karen Ranos, who Plaintiff states is his criminal defense lawyer, that commenced with the following phrase, "We come in the signs of the five highest principles known to man Love, Truth, Peace, Freedom and Justice," and concluded with, "We leave as we come in the signs of L, T, P, F and J." In the report, Uraski recorded that these phrases are used by the Black P Stone Security Threat Group (STG) as a greeting and form of farewell between members. Uraski also wrongly recorded that Plaintiff is a self-admitted member of the Black P Stone. (*Id.*).

On December 8, 2020, Plaintiff had a hearing for the disciplinary report before the Adjustment Committee, which was composed of Lieutenant Charles Heck and Bradley Kirkman. (Doc. 1, p. 6). At the hearing, Plaintiff explained that he was not a member of the Black P Stone and that the phrase was too broad to be only associated with a single STG. He argued that it is tied to oaths of the United States government and the beliefs of Moorish American Muslims. (*Id.*). He stated he is a Moorish American Muslim, and this phrase is customary greeting used by those who practice that faith. (*Id.* at p. 7). Heck responded that he understood that Plaintiff was "coming from the religion aspect," but that he did not write the offense, and internal affairs decides what constitutes STG activity. Heck asked Plaintiff if he wrote the message, and Plaintiff said yes. Heck then told Plaintiff that he was found guilty and sentenced to seven days in segregation, two months of commissary restrictions, and six months of visit restrictions. (*Id.*).

From December 4 through December 11, 2020, while Plaintiff was in segregation, he was not given his personal property. (Doc. 1, p. 10). Correctional officers asked Uraski about Plaintiff's property, and Uraski said the property would be returned to Plaintiff when he had finished investigating. Plaintiff received his property back on December 11, 2020, when he was released from segregation. (*Id.* at p. 11).

On December 21, 2020, Plaintiff was moved from a cell in C-wing, where everything was working, to a freezing cold cell in A-wing, where the heat did not work and there was a hole in the window. (Doc. 1, p. 11). The new cell also did not have hot water. Plaintiff spoke to several correctional officers about the cell conditions, and they said there was nothing they could do and that they could not move him. Correctional Officer Mircale told Plaintiff to "leave C/O Uraski alone and you wouldn't be in that cell." (*Id.* at p. 12).

## PRELIMINARY DISMISSAL

The Court dismisses all claims against Jeffrey Dennison, the Chief Administrative Officer at Pinckneyville Correctional Center. (Doc. 1, p. 3). Plaintiff does not assert any allegations against Dennison, and Dennison is not mentioned anywhere in the statement of claim. Accordingly, Plaintiff has failed to state a claim against Dennison, and he will be dismissed from this action without prejudice. *See Collins v. Kibort,* 143 F. 3d 331, 334 (7th Cir. 1998).

The Court also dismisses all claims Plaintiff intended to bring concerning inadequate medical care. (*See* Doc. 1, p. 11). Plaintiff states that at some point he was denied medical attention from a nurse who refused to prescribe him pain reliever and sleeping pills. The nurse is not identified as a defendant in the case caption, and therefore, any claims against the nurse are considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

## DISCUSSION

Based on the allegations in the Complaint and Plaintiff's articulation of his claims, the Court designates the following counts:

> **Count 1:** First Amendment free speech claim against Uraski, Heck, and Kirkman.
>
> **Count 2:** First Amendment freedom of religion claim against Uraski,

|  |  |
|---|---|
|  | Heck, and Kirkman. |
| **Count 3:** | Fourteenth Amendment due process claim against Uraski for writing Plaintiff a disciplinary report without conducting a proper investigation. |
| **Count 4:** | Fourteenth Amendment equal protection claim against Uraski. |
| **Count 5:** | First Amendment claim against Uraski for retaliating against Plaintiff for naming him, Uraski, in a previous lawsuit. |
| **Count 6:** | Eighth Amendment claim against Uraski for subjecting Plaintiff to cruel and unusual punishment. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Counts 1 and 2

Plaintiff alleges that his First Amendment rights to free speech and freedom of religion were violated when he was disciplined for using language in a message that is a well-known political phrase and connected with the Moorish Muslim faith. Plaintiff further argues that even if he were a member of the Black P Stones, which he is not, he should be able to speak this phrase without harassment. (Doc. 1, p. 7-8).

Count 1 will proceed against Uraski, Kirkman, and Heck for disciplining Plaintiff for including phrases in an outgoing message that were not gang-related and did not advocate violence or other disruptive behavior. *See Lindell v. Frank,* 377 F. 3d 655, 657 (7 Cir. 2004) ("[w]hen a prison regulation restricts a prisoner's First Amendment right to free speech, it is valid only if it is reasonably related to legitimate penological interest").

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Plaintiff has failed to state a claim regarding violation of his ability to practice his religion. The Free Exercise Clause of the First Amendment "prohibits the state from imposing a substantial burden on a central religious belief or practice," unless the burden is "reasonably related to legitimate penological interests." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). Although the phrase for which Plaintiff was punished for using is spoken within the religious community of Moorish American Muslims, Plaintiff also states it is common within American society and does not assert or describe how a prohibition on using the phrase restricted or impacted his ability to practice his faith. Count 2 is dismissed.

### Count 3

Prisoners are not entitled to Fourteenth Amendment due process protections unless they can establish the deprivation of a constitutionally protected interest in life, liberty, or property. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (*per curiam*). A prisoner has no protected liberty interest in housing in the general inmate population, except in the rare instances that his "segregation conditions…constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *See also Zimmerman v. Tribble*, 226 F. 3d 568, 572 (7th Cir. 2000) ("the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.").

Here, the conditions that Plaintiff was subjected to as a result of the disciplinary ticket and subsequent sanctions do not rise to the level of a liberty interest. Seven days in segregation and commissary and visitor restrictions do not invoke due process protections. *See Woody v. Zatecky*, 594 F. App'x 311, 312 (7th Cir. 2015); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005). Thus,

a proper investigation and disciplinary hearing were not required. Accordingly, Count 3 is dismissed.

### Count 4

Plaintiff states that every inmate is entitled to a fair and legitimate investigation into the facts. (Doc. 1, p. 9). Because he was taken to segregation without a proper investigation, Uraski has violated his equal protection rights. (*Id.*).

To state an equal protection claim, a plaintiff must allege that he was treated differently from others based on membership in a suspect class or based upon the denial of a fundamental right. *See, e.g., Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). Here, Plaintiff does not allege facts to support an equal protection violation against Uraski for not properly investigating the charge of security threat group activity. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (conclusory legal statements are not sufficient to state a claim). Accordingly, Count 4 will be dismissed for failure to state a claim.

### Count 5

Plaintiff claims that Uraski retaliated against him for naming Uraski in a previous lawsuit by: (1) writing him the disciplinary ticket dated December 4, 2021, regarding security threat group activity; (2) withholding his property for eight days while he was in segregation; and (3) moving him to a cold cell with no working heat and a hole in the window and no running water. (Doc. 1, p. 10-12). These allegations sufficiently state a claim for retaliation, and Count 5 will proceed.

### Count 6

Count 6 is dismissed. Plaintiff's assertions that Uraski wrote him a disciplinary report, withheld his property for a week, and had him transferred to a less desirable cell do not rise to the level of a constitutional violation under the Eighth Amendment. *See Dobbey v. Ill. Dep't of Corr.*,

574 F.3d 443, 446 (7th Cir. 2009) ("harassment, while regrettable, is not what comes to mind when one thinks of cruel and unusual punishment").

## DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Uraski, Heck, and Kirkman. **COUNT 5** will proceed against Uraski. **COUNTS 2, 3, 4,** and **6** are **DISMISSED** without prejudice. All claims against Dennison are **DISMISSED without prejudice.** The Clerk is **DIRECTED** to terminate him as a party to this case.

The Clerk of Court **SHALL** prepare for Uraski, Heck, and Kirkman the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to**

**Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 18, 2024**

        *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.